**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC SABATINI,<br><br>                Plaintiff,<br><br>    v.<br><br>WIRELESS TELECOM GROUP, INC., C. SCOTT GIBSON, ALAN L. BAZAAR, JENNIFER FRITZSCHE, MICHAEL H. MILLEGAN, ALLAN D. L. WEINSTEIN, and TIMOTHY WHELAN,<br><br>                Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Eric Sabatini ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Wireless Telecom Group, Inc. ("WTT" or the "Company") and the members of WTT's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell WTT to Maury Microwave, Inc. ("Maury") (the "Proposed Transaction").

2. On May 24, 2023, WTT entered into an Agreement and Plan of Merger with Maury and Maury's wholly owned subsidiary, Troy Merger Sub, Inc. ("Merger Sub") (as amended, the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, WTT shareholders will receive $2.13 in cash for each WTT common share (the "Proposed Transaction").

3. On June 28, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that WTT stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections, including the most critical financial metric for WTT stockholders—WTT's unlevered free cash flow ("UFCF") projections—relied upon by the Company's financial advisor, Cyndx Advisors, LLC d/b/a CDX Advisors ("CDX") in connection with its fairness opinion; (ii) the financial analyses that support the fairness opinion provided by CDX; (iii) the background of the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as WTT stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for WTT stockholders to vote on the Proposed Transaction is currently scheduled for August 2, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and WTT's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. WTT's common stock trades on the NYSE American, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of WTT common stock.

10. Defendant WTT is a New Jersey corporation, with its principal executive offices located at 25 Eastmans Road, Parsippany, New Jersey 07054. WTT's shares trade on the NYSE American under the ticker symbol "WTT."

11. Defendant C. Scott Gibson has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Alan L. Bazaar has been a director of the Company at all relevant times and previously served as Chairman of the Board from April 2014 to July 2022.

3

13. Defendant Jennifer Fritzsche has been a director of the Company at all relevant times.

14. Defendant Michael H. Millegan has been a director of the Company at all relevant times.

15. Defendant Allan D. L. Weinstein has been a director of the Company at all relevant times.

16. Defendant Timothy Whelan has been Chief Executive Officer and a director of the Company at all relevant times.

17. Defendants identified in paragraphs 11-16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

18. WTT is a global designer and manufacturer of advanced radio frequency and microwave components, modules, systems, and instruments. The Company is comprised of Boonton Electrics Corporation, Holzworth Instrumentation, Inc., and Noisecom, Inc. WTT serves the wireless, telecommunication, satellite, military, aerospace, and semiconductor industries. The Company's products include peak power meters, signal generators, phase noise analyzers, signal processing modules, noise sources, and programmable noise generators.

### The Proposed Transaction

19. On May 25, 2023, WTT announced that it had entered into the Proposed Transaction, stating, in relevant part:

> Parsippany, New Jersey, USA – May 25, 2023 – Wireless Telecom Group, Inc. (NYSE American: WTT) (the "Company" or "WTT"), a leading test & measurement solutions provider, today announced that it entered into a definitive merger agreement to be acquired by Maury Microwave, Inc. ("Maury") in an all-

cash transaction. Under the terms of the merger agreement, which was unanimously approved by the board of directors of each company, Maury will acquire all the outstanding shares of the Company for an estimated total cash consideration of $2.13 per share. The consideration per share represents a premium of 34% to the Company's closing share price as of May 24th and a premium of 50% since the date of the announcement of the Strategic Alternatives process in July 2022. The Company will file a proxy statement regarding the proposed transaction with the Security and Exchange Commission (the "SEC") as described below and is expected to close in the third quarter of 2023.

Tim Whelan, the Company's CEO stated, "Today's announcement represents the successful result of a comprehensive strategic alternatives' review process, and a significant milestone in the Company's transformation. Once approved by shareholders, this transaction will achieve our goals of maximizing shareholder value by realizing the sum-of-the-parts value of our Company, and efficiently returning capital to our shareholders. We believe this outcome is in the best interest of our shareholders, the Company, our employees, and our customers." Mr. Whelan added, "The Company has a highly skilled employee base, specialized, differentiated solutions, and a deep commitment to customers. We believe that given the scale of our Company, private ownership offers benefits over public ownership, including lower operating costs, and continued capital investment to accelerate its growth strategy, enhance its customer delivery, and evolve the organization for the future. The Company will continue to focus on our specialized test and measurement solutions to address customers' differentiated requirements in the semiconductor, satellite, aerospace and defense sectors."

Michael Howo, Maury's CEO, expressed his enthusiasm for the deal "We have long appreciated the leadership position of the Boonton, Holzworth and Noisecom brands' high-performance solutions and long-term customer relationships and we have always been interested in finding market opportunities where we could partner. We look forward to contributing additional engineering and sales resources and technical value to the Company's core capabilities and help drive the next phase of growth."

Bill Pezza, Maury's Executive Chairman, stated "The Wireless Telecom Group test and measurement business provides mission-critical solutions to companies in aerospace, defense, semiconductor, and quantum computing applications that we believe are poised for long-term investment and growth. Consistent with our successful history transforming and adding value to businesses, we look forward to supporting the management teams driving investment in the Company to underscore their market leadership and deliver solutions across the globe."

WTT's current CEO, Tim Whelan will step aside at the close of the transaction and the Company will continue to be managed by its remaining leadership team led by Daniel Monopoli, WTT's Chief Technology Officer and General Manager of the Test & Measurement segment and Mike Kandell, WTT's Chief Financial Officer.

The business will continue to operate from its headquarters in New Jersey as a division of Maury.

**Approvals and Timing**

Completion of the transaction is expected in the third quarter of 2023, subject to the approval of Wireless Telecom Group shareholders and the satisfaction of other customary closing conditions.

The Wireless Telecom Group Board of Directors unanimously approved the merger agreement and recommended that Wireless Telecom Group shareholders vote in favor of it at a Special Meeting of Stockholders, to be scheduled as soon as practicable.

The transaction is not subject to a financing condition. Upon completion of the transaction, Wireless Telecom Group will become a private company and shares of Wireless Telecom Group's common stock will no longer trade on the NYSE. The Company expects to maintain its headquarters in Parsippany, NJ.

CDX Advisors is serving as exclusive financial advisor and Bryan Cave Leighton Paisner LLP is serving as legal counsel to Wireless Telecom Group.

Morgan, Lewis & Bockius LLP is serving as legal counsel to Maury Microwave.

**The Materially Incomplete and Misleading Proxy Statement**

20.     On June 28, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC.  The Proxy Statement, which recommends that WTT stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections, including the UFCFs relied upon by CDX in connection with its fairness opinion; (ii) the financial analyses that support the fairness opinion provided by CDX; (iii) the background of the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest.

*Material Misrepresentations and/or Omissions Concerning WTT's Financial Projections*

21.     The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

22.     Critically, the Proxy Statement fails to disclose the UFCFs that WTT was forecasted to generate during WTT's calendar years 2023 through 2025, relied upon by the Board's financial advisor in connection with its *Discounted Cash Flow Analysis ("DCF")* of the Company. Specifically, according to the Proxy Statement:

> CDX performed a discounted cash flow analysis of WTT to calculate the estimated present value of the standalone unlevered, after-tax free cash flows, defined as net operating profit after tax, plus depreciation and amortization and stock-based compensation, less changes in net working capital and capital expenditures, that WTT was forecasted to generate during WTT's calendar years 2023 through 2025 based on the projections (as described in the section of this proxy statement entitled "*The Merger - Projected Financial Information*") and Forecasts provided by management of WTT. CDX calculated the terminal value of WTT utilizing a terminal multiple methodology.

Proxy Statement at 46.  Yet, the Proxy Statement fails to disclose the Company's UFCFs which were utilized by CDX in performing its *DCF* of the Company.

23.     The Proxy Statement further fails to disclose all line items underlying the calculation of the Company's projected: (i) UFCFs; (ii) Segment Operating Income; and (iii) Non-GAAP Adjusted EBITDA.

*Material Misrepresentations and/or Omissions Concerning CDX's Financial Analyses*

24.     The Proxy Statement fails to disclose material information concerning CDX's financial analyses.

25.     With respect to CDX's *Discounted Cash Flow Analysis*, in addition to the UFCFs and underlying line items, the Proxy Statement fails to disclose a quantification of: (i) the terminal values for WTT; (ii) the inputs and assumptions underlying the discount rates ranging from 14.5% to 16.5%; and (iii) the Company's shares outstanding used in the analysis.

26. With respect to CDX's *Selected Public Trading Valuation Analysis* and *Selected Precedent Transaction Valuation Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the companies and transactions analyzed, respectively.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

27. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

28. Specifically, the Proxy Statement fails to disclose whether the non-disclosure agreements the Company executed with 21 bidders as part of the sale process contain a "don't-ask, don't-waive" standstill provision that is presently precluding any of these parties from submitting a topping bid for the Company.

29. The Proxy Statement further fails to disclose the terms of all proposals and indications of interest the Company received from interested parties during the sale process.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

30. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

31. Specifically, the Proxy Statement sets forth that "Maury was considering offering employment on reasonable and customary terms to Messrs. Kandell and Monopoli following consummation of the merger *but no discussions or negotiations occurred prior to signing of the merger agreement*[.]" *Id.* at 38 (emphasis added). Yet, the Proxy Statement also sets forth that "*prior to the signing of the merger agreement there were discussions* between WTT and Maury regarding Maury's desire to retain certain members of WTT's senior management team post-closing." *Id.* at 59 (emphasis added). The Proxy Statement must clarify whether any discussions

8

or negotiations occurred prior to signing the Merger Agreement between Company officers and directors and Maury regarding potential employment with the combined company. The Proxy Statement further fails to disclose whether any of Maury's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

32. In sum, the omission of the above-referenced information renders statements in the "Projected Financial Information," "Opinion of WTT's Financial Advisor – Cyndx Advisors, LLC d/b/a/ CDX Advisors," "Background of the Merger," "Interests of WTT Directors and Executive Officers in the Merger," and "Recommendation of the WTT Board of Directors and Reasons for the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of WTT will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and WTT**

33. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

34. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. WTT is liable as the issuer of these statements.

35. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

36. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

38. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

39. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

40. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of WTT within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of WTT and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power

to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

45. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of WTT, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 12, 2023                               **ACOCELLI LAW, PLLC**

                                                   By  */s/ Richard A. Acocelli*
                                                   Richard A. Acocelli
                                                   33 Flying Point Road, Suite 131
                                                   Southampton, NY 11968
                                                   Tel: (631) 204-6187
                                                   Email: racocelli@acocellilaw.com

                                                   *Attorneys for Plaintiff*